**In re Q. D.**

No. 18292.

Court of Civil Appeals of Texas, Fort Worth.

May 29, 1980.

Thomas L. G. Ross, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and William D. Kane, Jr., C. Chris Marshall, and Betty McCutchan, Asst. Dist. Attys., Fort Worth, for appellee.

## OPINION

HUGHES, Justice.

This is an appeal from the certification as an adult of a sixteen year old male charged with committing three felonies and the transfer of the cause to the district court for criminal proceedings.

We affirm.

Q.D. is alleged to have committed rape, aggravated rape, and aggravated kidnapping. He was charged with having participated in the abduction and rape, both at knifepoint, of a pregnant sixteen year old female. Q.D. was referred to the Juvenile Court of Tarrant County. The State petitioned the trial court to waive its jurisdiction and transfer the cause to district court so Q.D. could be tried as an adult. Before a hearing on the State's motion, the trial court ordered a prediagnostic study.

The study included separate psychiatric and psychological evaluations of Q.D. It reflected that: (1) Q.D. had previously been psychologically examined on two other occasions within the preceding six months, one of which was as the result of prior proceedings brought against him; (2) Q.D. had been declared a juvenile delinquent by the same court and placed on probation for one year for auto theft; and (3) Q.D. had been referred to the same court on four other unrelated occasions where proceedings had either not been instituted or where the district attorney had declined to pursue the charge. These prior referrals concerned charges ranging from auto theft and hit and run driving to attempted capital murder of a police officer.

At the certification hearing the trial court considered the study, and heard testimony from the rape victim, her husband and the psychiatrist who had conducted the psychiatric examination as part of the prediagnostic study. The trial court then waived its jurisdiction on the grounds that it would be contrary to the best interest of the community and Q.D. for the court to retain jurisdiction, and that due to the seriousness of the offenses charged and Q.D.'s background, criminal proceedings were proper. Q.D. has appealed on three points of error.

Q.D.'s first point complains that it was an abuse of discretion for the trial court to refuse to appoint a psychiatrist to examine him at the start of the certification hearing. As authority, Q.D. cites Tex. Family Code Ann. sec. 55.04 (1975), which states that: "No child who as a result of mental disease or defect lacks capacity to understand the proceedings in juvenile court . . . shall be subjected to . . . transfer to criminal court, . . . ", and *Meza v. State*, 543 S.W.2d 189 (Tex.Civ.App. —Austin 1976, no writ). We distinguish *Meza* on its facts, hold that it is not controlling here, and overrule this point. There is no evidence or suggestion in any of the three psychological examinations performed on Q.D. within the preceding six months that he suffered from any mental disease or mental disorder. One of these examinations, conducted by a psychiatrist, was made two days before the certification hearing. The only question raised was about Q.D.'s intelligence, not his mental state. There was evidence that Q.D. was

capable of, and did understand, the nature of the charges against him and the functioning of a criminal court. It would follow that if Q.D. were able to understand both the nature of the charges brought against him and the functioning of a criminal court, he should also be able to understand the proceedings brought against him in a juvenile court. Therefore, the trial court did not abuse its discretion when it denied the appointment of a court appointed psychiatrist to examine Q.D. for purposes of the certification hearing.

■ Q.D. also complains that it was error to admit the prediagnostic study over his objection in that the study was hearsay and inadmissible. This contention is without merit. Tex. Family Code Ann. sec. 54.02(d) (1975) requires the court to obtain a prediagnostic study, and Tex. Family Code Ann. sec. 54.02(e) (1975) allows the court to consider this study in addition to other testimony. Section 54.02 of the Family Code is a statutory exception to the hearsay rule and authorizes the introduction of specified reports that would otherwise be objectionable. *Matter of J. R. C.*, 551 S.W.2d 748, 752 (Tex.Civ.App.—Texarkana 1977, writ ref'd n. r. e.). The prediagnostic study was one such report contemplated by the Family Code. We overrule Q.D.'s point of error with respect to the admission of the study.

■ Under his second point Q.D. also complains that part of the material incorporated into the prediagnostic study incorrectly refers to him as Caucasian, and that as a result, there is a question of the accuracy of the report, making it improper for the court to consider it. The report on its face nonetheless has enough other information sufficient to identify Q.D. There is apparently no question as to whom the report has reference. The report refers to Q.D. by name, explains where and the circumstances under which he was interviewed, and details prior examinations of the same person. There are numerous references to Q.D. with sufficient particularity that the potential unreliability of the report, as indicated by one mistake categorizing Q.D. as Caucasian, is minimal. In addition, Q.D.

was identified at the certification hearing as the assailant by the victim's husband, thus collaborating identification of Q.D. We hold that it was not error to admit the report even though it contained one mistake of identification.

Finally, Q.D. complains that there was insufficient evidence to support the trial court's decision. Specifically, Q.D. complains that there is insufficient evidence concerning his sophistication and maturity, his prior record, his family background, and the potential of his rehabilitation.

Tex. Family Code Ann. sec. 54.02(a) (1975) provides three statutory requirements which must be met before a child such as Q.D. can be tried as an adult. Essentially, the child must be charged with a crime which would be of felony grade if that crime were committed by an adult; the child must be over fifteen years of age; and the welfare of the community must require criminal proceedings brought against the child because of the seriousness of the offense or the background of the child. In making the findings required above, the Family Code requires that the trial court shall consider the following factors:

"(1) [W]hether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

"(2) [W]hether the alleged offense was committed in an aggressive and premeditated manner;

"(3) [W]hether there is evidence on which a grand jury may be expected to return an indictment;

"(4) [T]he sophistication and maturity of the child;

"(5) [T]he record and previous history of the child; and

"(6) [T]he prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court."

Tex. Family Code Ann. sec. 54.02(f) (1975).

Q.D. concedes that he is charged with a felony grade crime and that he is over the

age of fifteen years. In considering the welfare of the community, however, Q.D. complains that the court did not have sufficient evidence to make a finding that each of the six factors enumerated above were met. Specifically, Q.D. complains that factors (4), (5) and (6) were supported by insufficient evidence.

■ To begin with, the trial court is bound only to consider all six factors. It need not find that each factor is established by the evidence. *Matter of J. R. C., supra* at 753; *D. J. R. v. State*, 565 S.W.2d 392 (Tex.Civ.App.—Fort Worth 1978, no writ); *I. L. v. State*, 577 S.W.2d 375 (Tex.Civ.App. —Austin 1979, writ ref'd n. r. e.). Q.D. argues that even though the trial court found factors (4), (5) and (6) in favor of the State, they were supported by insufficient evidence.

■ We do not agree. Assuming *arguendo*, even if there is insufficient evidence to support factors (4), (5) and (6), since Q.D. attacks only the sufficiency of the evidence as to these factors, he logically concedes that there is sufficient evidence to support the findings of factors (1), (2) and (3). Based on the case law authority cited above, the findings on these first three factors alone would be enough to support the certification decision, so long as the trial court considered the other three factors. This the trial court did, as is indicated by the record and the trial court's order waiving jurisdiction.

Moreover, we hold there was sufficient evidence to support the findings of the trial court with respect to each of the challenged criteria. The examining experts testified that Q.D. had a very functional use of "street language" and that he was knowledgeable about the functioning of an adult criminal court. Furthermore, Q.D. knew the difference between right and wrong in addition to being able to understand and comprehend the consequences of any criminal acts committed by him. There was sufficient evidence to support the trial court's finding that he was sufficiently sophisticated and mature to stand trial as an adult.

With respect to Q.D.'s "record and previous history", the trial court had previously declared him a delinquent and placed him on probation for one year. In addition, Q.D. had been referred to the trial court on four previous occasions immediately preceding the commission of the present offense and each referral was for a felony grade crime, if the act had been committed by an adult. As court records, the trial court could take judicial notice of Q.D.'s probation and these referrals. *B. R. D. v. State*, 575 S.W.2d 126 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *R. M. v. State*, 563 S.W.2d 853 (Tex.Civ.App.—Austin 1978, no writ); and *H. L. H. v. State*, 560 S.W.2d 536 (Tex.Civ.App.—Austin 1978, no writ). Therefore, there is sufficient evidence to support the findings regarding Q.D.'s record and previous history.

Finally, Q.D. attacks the evidence supporting the trial court's findings regarding any need for the protection of the public in general and the likelihood of his rehabilitation through facilities currently available to the trial court. Based on the facts that (1) Q.D. was on probation for an act which, if committed as an adult, would amount to a felony grade crime, (2) while he was on probation, Q.D. was charged with serious crimes of violence directed against the person, and (3) Q.D. had had prior violent confrontations with law enforcement authorities, there was adequate evidence that he was incorrigible, not amenable to rehabilitation through use of facilities available to the trial court, and that he presented a danger to society which could not be adequately protected without trying him for the alleged crimes as an adult in district court. There would appear to be little chance to rehabilitate Q.D. in the future as a juvenile and the more immediate need to protect society against violent persons like him outweighed other factors mitigating in favor of continued treatment of Q.D. as a juvenile. The trial court did not err in so concluding.

The judgment of the trial court certifying Q.D. as an adult and transferring the cause to the district court for criminal prosecution as such is affirmed.